Moore *v.* Fields.

ROBERT MOORE, Complainant, *v.* AMBROSE FIELDS, Respondent.

*Appeal from Washington.*

1. The courts of this State will entertain no proceedings, arising out of facts still pending in, and undetermined by, the land department of the United States.
2. In the absence of any limit of time, when appeals must be taken from the land office in Oregon to the general land office, the courts will infer a reasonable time.

THE complainant exhibited his bill against the respondent in April, 1854, with a prayer for an injunction to stay waste, and also to compel the respondent to compensate the complainant for certain valuable timber removed from the premises of the complainant. The complainant settled upon a certain tract of land, in Clackamas County, in 1842, claiming 640 acres; and after the passage of the Oregon donation act, so called, of September 27th, 1850, the land was adjudged to him by the surveyor-general, John B. Preston. It was admitted, as facts in the case, that complainant's wife was never in this territory of Oregon; that she died in Missouri in 1848, two years before the passage of the donation act, and that he could not hold more than 320 acres, unless in right of his wife.

Originally, Robert Moore and others were joined in the

action, as heirs-at-law of Margaretta Moore, the wife of said complainant; but subsequently the suit was discontinued as to them, the successor of Preston having opened the case for the purpose of reversing the former decision as to the claim of Margaretta Moore, the commissioner of the general land office having advised the land office in Oregon, that nothing could be held in right of a person deceased before the passage of the act. In the mean time, about 1847, Moore had sold to Fields eighteen perches of land out of his tract, and executed a bond for a deed, when he, the complainant, should obtain a title from the United States for the land. Upon the establishment of a land office at Oregon City, and the appointment of a register and receiver, all conflicts of boundaries, &c., were passed from the surveyor-general's office to the office of the register and receiver. When the respondent became aware that Moore was entitled to but 320 acres of land, he set up a claim in his own right, filing his notification for a tract of land, which included his residence, as well as a large portion of land claimed by Moore. A conflict of boundary thus arose between the parties herein. No question was made as to the priority of Moore's claim—that was conceded.

On the 23d of December, 1855, the register and receiver proceeded to hear and determine the matter, and after consideration, fixed an initial point of Moore's claim, and directed in what manner the line should be run to include 320 acres. The survey was afterwards made by a deputy surveyor, according to his instructions, who reported to the land office, and his report was confirmed. The field notes and plat of this survey are among the exhibits annexed to the bill in this case. All the testimony in the case has reference to this survey. This suit was brought to a hearing at the June term, 1857, of the District Court for the second district; when, it appearing that the respondent had committed certain trespasses and wastes upon the lands of the claimant, the court referred the question of damages to Amory Holbrook, Esq., to take the proofs and report his judgment therein. The injunction originally allowed was continued. At the June term

of said court, 1858, the referee reported, having adjudged the damages of the complainant to be $125. The court confirmed the report, but stayed the execution until the further order of the court, upon a suggestion of the respondent's counsel, that an appeal had been taken from the decision of the register and receiver, and was then pending before the commissioner of the general land office.

Thus the matter stood until October, 1859, when the complainant moved for an execution to issue, on the ground that no appeal had been perfected. The motion was allowed. From these proceedings the respondent has appealed.

*A. Holbrook,* for complainant.

*J. K. Kelly,* for respondent.

STRATTON, J.  Two principal questions were made in the argument by counsel for the respondent :

*First.* That there ought not to have been any finding of damages for the complainant.

*Second.* That the court ought not, under the circumstances, to have ordered execution to issue.

As to the first point : The testimony reported by the referee is quite voluminous, and somewhat conflicting; but on looking into it, we are satisfied that the finding of the referee, and the judgment of the court below confirming it, was sufficiently favorable to the respondent, if indeed a larger amount of damages was not warranted by the testimony.  Palpably the respondent had placed himself in the wrong, and ought to be made to pay the full damage consequent upon his trespass.  There is nothing in his situation or conduct to exempt him, or to mitigate the damages.

As to the second point: The argument proceeded upon an established rule of this court, to entertain no proceedings arising out of facts still pending and undetermined by the tribunals of the land department of the United States; and where actions had been commenced, when the fact has been

made to appear that any such controversy was in process of investigation by the proper department, this court has uniformly suspended its proceedings, until the final judgment of the "land department." The register and receiver rendered their decision in 1855, at which time the respondent gave verbal notice of his intention to appeal to the commissioner of the general land office; but, in fact, took no other step until December, 1857, when the referee was proceeding to take testimony touching the question of damages, then Fields ordered the register to prepare his papers for transmission to Washington. In June, 1858, when the Circuit Court confirmed the report of the referee, upon a suggestion of this appeal, the judge ordered execution not to issue until further order of the court. For aught that appears, the respondent never took any further step in the matter of his appeal; and at the October term, 1859, of the Circuit Court, the judge very properly, we think, set aside the order staying execution. It does not appear that there is any fixed time in which appeals from registers and receivers shall be taken to the department at Washington; but, if there is not, justice and good sense would say that the time ought to be reasonable, and that the rights of a party ought not to be held in abeyance, an indefinite length of time, at the mere caprice or the interest of his adversary.

Here the respondent had more than ample time to make his appeal effectual for some purpose, and it is his own fault if he did not. But it is pretty clearly evident that he only sought a temporary respite from the execution.

Judgment is therefore affirmed.